UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SARAH R. C.,[1]

                          Plaintiff,

-vs-

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

DECISION AND ORDER

24-CV-0083-MAV

---

## INTRODUCTION

In January 2024, Sarah R. C. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of the United States Social Security Administration's ("Commissioner") denial of her application for Disability Insurance Benefits ("DIB"). Compl., Jan. 24, 2024, ECF No. 1. Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., Apr. 2, 2024, ECF No. 5; Def.'s Mot., Apr. 30, 2024, ECF No. 7. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings [ECF No. 5] is denied. The Commissioner's motion [ECF No. 7] is granted.

## PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

---

[1] The Court's Standing Order issued on November 18, 2020, directs that, "in opinions filed pursuant to . . . 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

1

## I. Plaintiff's Applications

Plaintiff filed her application for DIB in February 2021, alleging a disability onset date of January 2, 2016. Administrative Record ("AR"), 85, 231–35,[2] Mar. 4, 2024, ECF No. 3. She identified several physical conditions that she claimed limited her ability to work, including: chronic migraines, chronic muscle tension headache, chronic lightheadedness, dizziness, shortness of breath, tachycardia, chronic fatigue, shoulder and neck pain, and diabetes. AR at 272. In April 2021, the Commissioner found that Plaintiff was "not disabled," and her claims for DIB payments were denied. AR at 85–92. Plaintiff requested a reconsideration of the initial determination, and in November 2021 was again found "not disabled." AR at 93–102.

## II. Plaintiff's Hearing Before the ALJ

After the Commissioner denied her applications at the initial level and on reconsideration, Plaintiff appeared via video conference on January 18, 2023 for a hearing before an Administrative Law Judge ("ALJ"). AR at 38. Plaintiff testified that she became disabled on January 2, 2016 when she "came down with some kind of a virus . . . and it was kind of like my whole just broke." AR at 45–46. From that point, Plaintiff stated that her headaches were worse, she had "stability issues," "balance issues," issues standing for any amount of time, and exhaustion. AR at 46. In terms of her daily activities, Plaintiff stated that she had six to eight debilitating migraines each month that prevented her from leaving the house, and that even when she did

---

[2] The page references from the transcripts are to the bates numbers inserted by the Commissioner, not the pagination assigned by the Court's CM/ECF electronic filing system.

not have a migraine, she only left her house if she had a doctor's appointment or needed groceries. AR at 57–58. She testified that she could get her housework done, but only in short spurts of about 15 minutes each. AR at 56.

### III. The ALJ's Decision

On December 12, 2022, the ALJ issued a decision finding that Plaintiff was not disabled, and therefore did not qualify for DIB. AR at 31.

At the outset, the ALJ found that Plaintiff met the insured status requirements for DIB[3] through June 30, 2018. AR at 20. Thus, at step one of the Commissioner's "five-step, sequential evaluation process,"[4] the ALJ considered the relevant period – from Plaintiff's alleged onset date of January 2, 2016 through her date last insured of June 30, 2018 – and found that Plaintiff had not engaged in substantial gainful activity during that time. AR at 20.

---

[3] Claimants must meet the insured status requirements of the Social Security Act to be eligible for DIB. *See* 42 U.S.C. § 423(c); 20 C.F.R. § 404.130.

[4] In addition to the insured status requirements for DIB benefits, the Social Security Administration has outlined a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); citing, *inter alia*, 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

3

At step two, the ALJ determined that Plaintiff's headache disorder was a severe impairment, but that her hypertension, tachycardia, asthma, gout, and Type 2 diabetes were all non-severe impairments. AR at 20–21. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, including the listing for epilepsy in section 11.02. AR at 21–22. *See also, e.g., Stacey L. H. v. Kijakazi*, No. 5:21-CV-1014 (BKS), 2023 WL 2265803, at *5 (N.D.N.Y. Feb. 28, 2023) (citing *Evaluating Cases Involving Primary Headache Disorders*, Social Security Ruling 19-4p ("SSR 19-4p"), 2019 WL 4169635, at *7 (S.S.A. Aug. 26, 2019)) (explaining that primary headache disorder is not a listed impairment, but that listing 11.02 should be considered as "the most closely analogous listed impairment").

Then, before proceeding to step four, the ALJ carefully considered the entire record and determined that Plaintiff had the residual functional capacity[5] ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except Plaintiff "could have no concentrated exposure to potential hazards (moving machinery and unprotected heights)." AR at 22. The ALJ explained that limiting Plaintiff's exposure to potential hazards accounted for the symptoms of balance deficits, difficulty walking, and dizziness which may have been related to her headache disorder. AR at 24.

At step four, the ALJ found that Plaintiff was not capable of performing her

---

[5] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545.

4

past relevant work as a hotel clerk, fast food worker, baker, or teller. AR at 29. Nevertheless, based on Plaintiff's age, education, work experience, and RFC, as well as the testimony of the vocational expert, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. AR at 30–31. Therefore, the ALJ found that Plaintiff was not disabled, and not entitled to DIB payments. AR at 31.

On December 11, 2023, the Appeals Council denied Plaintiff's request to review the ALJ's decision. AR at 1–7. The ALJ's decision thus became the "final decision" of the Commissioner. *See Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996) (citing 20 C.F.R. § 404.981) ("[I]f the Appeals Council denies review, the ALJ's decision becomes the [Commissioner]'s final decision.").

## LEGAL STANDARD

Under 42 U.S.C. § 423(d), a claimant is disabled and entitled to DIB if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." Where an individual's application for DIB has been denied, 42 U.S.C. § 405(g) defines the process and scope of judicial review of the Commissioner's final decision. The fourth sentence of § 405(g) authorizes the reviewing court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." The sixth sentence authorizes the reviewing court to "order additional evidence to be taken before the Commissioner

. . . upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (discussing § 405(g)).

"The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted). Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, the reviewing court must determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the claimant received a full and fair hearing, and the correct legal standards are applied, the district court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"Whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (noting that the phrase "substantial evidence" is a term of art used in reviewing administrative agency decisions to signify evidence that amounts to "more than a mere scintilla"). Thus, once an ALJ finds facts, a reviewing court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d

at 448. Yet, although "the evidentiary threshold for the substantial evidence standard is not high, . . . [it] is also not merely hortatory: [i]t requires relevant evidence which would lead a reasonable mind to concur in the ALJ's factual determinations." *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022) (internal quotation marks omitted).

## DISCUSSION

In her motion for judgment on the pleadings, Plaintiff argues that the ALJ "ignored evidence of persistent and increasing symptoms," failed to sufficiently limit the RFC determination consistent with her finding of the severity of Plaintiff's headache impairment and her symptoms, and mischaracterized the evidence. Pl. Mem., 9–14, Apr. 2, 2024, ECF No. 5-1. The end result, Plaintiff contends, was a decision that was not supported by substantial evidence. *Id.* at 14. The Commissioner maintains that the ALJ did not commit legal error, and that the RFC determination was based on substantial evidence. Def. Mem., Apr. 30, 2024, ECF No. 7-1.

After a thorough review of the record, the Court agrees with the Commissioner that the ALJ applied the proper legal standards, and made an RFC finding that was supported by substantial evidence from the period relevant to Plaintiff's claim, which ran from her alleged onset date of January 1, 2016 through her date last insured of June 30, 2018. *See* 20 C.F.R. § 404.315(a)(1) ("You are entitled to disability benefits while disabled before attaining adult retirement if . . . [y]ou have enough social security earnings to be insured for disability . . . .").

## I. The ALJ's Symptom Analysis

Plaintiff argues that the ALJ erred by relying on statements indicating

7

improvement of Plaintiff's headaches, and "ignor[ing] evidence of persistent and increasing symptoms." ECF No. 5-1 at 9. This argument is without merit.

To properly assess the RFC of claimants with the medically determinable impairment of a primary headache disorder, the ALJ "must consider and discuss the limiting effects of all impairments and any related symptoms . . . ." SSR 19-4p, 2019 WL 4169635, at *7–8. In particular, the ALJ must consider "the extent to which the person's impairment-related symptoms are consistent with the evidence in the record." *Id.* at *8.

The regulations define "symptoms" as the claimant's "own description of [her] physical or mental impairment." 20 C.F.R. § 404.1502(i). A claimant's statements about her symptoms will not alone establish that she is disabled. 20 C.F.R. § 404.1529(a). Rather, the ALJ must evaluate the symptoms using a two-part analysis. *Evaluation of Symptoms in Disability Claims*, Social Security Ruling 16-3p ("SSR 16-3p"), 81 FR 14166-01, 2016 WL 1020935, at *14167 (S.S.A. Mar. 16, 2016).

First, the ALJ must determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. *Id.* (citing, *inter alia*, 20 C.F.R. § 404.1529(a)).

Second, the ALJ must evaluate the intensity and persistence of the individual's symptoms and determine the extent to which they limit her ability to perform work-related activities. *Id.* at *14168. At this step of the analysis, the ALJ must consider all of the available evidence from the claimant's medical sources and nonmedical sources about how her symptoms affect her. 20 C.F.R. § 404.1529(c)(1). This includes

objective medical evidence, medical opinions, and "other evidence" such as the claimant's daily activities, the effectiveness of medication taken to alleviate the symptoms, and treatment received for relief of the symptoms. 20 C.F.R. § 404.1529(c)(1)–(3). Thus, "an ALJ 'is not required to accept the claimant's subjective complaints without question.'" *Tibbles v. Comm'r of Soc. Sec.*, No. 22-1127-CV, 2023 WL 3477127, at *2 (2d Cir. May 16, 2023) (summary order) (quoting *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010)).

In the present case, Plaintiff supports her argument that the ALJ ignored evidence of persistent and increasing symptoms with references to multiple records from Plaintiff's treatment with Dent Neurologic Institute. For instance, Plaintiff cites her initial neurological evaluation with Nicolas Saikali, M.D., in April 2016, during which she reported that she required a quiet room when she was having a headache, and sometimes experienced phonophobia, photophobia, irritability, and nausea. ECF No. 5-1 at 10–11 (citing AR at 681). Plaintiff also pointed out that over the course of her monthly treatment at Dent between 2016 and 2018, she was on multiple medications for migraines, experienced reduced neck range and tenderness, and was treated with multiple rounds of trigger point and nerve block injections. ECF No. 5-1 at 11 (citing records from multiple visits, AR at 626–82).

Despite this multitude of citations to records from her treatment at Dent, however, Plaintiff has failed to demonstrate that the ALJ applied an improper standard, or failed to support his symptoms analysis with substantial evidence. Indeed, the ALJ acknowledged the symptoms that Plaintiff alleged from her

headache disorder, noting that Plaintiff alleged her headaches began in 1989, and worsened over time, particularly after Plaintiff's illness in January 2016. AR at 23. The ALJ also observed that Plaintiff reported that her headaches occurred daily, but varied in intensity; that she was sensitive to bright light when experiencing a headache; that in addition to her chronic headaches, she experienced migraines six to eight times each month, causing 9-10 out of 10 pain; and that she was only able to perform household chores in 15-minute increments. AR at 23.

Nevertheless, the ALJ concluded that although Plaintiff's headache disorder could reasonably be expected to cause the alleged symptoms, her statements about the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. AR at 24. Specifically, the ALJ observed that treatment notes during the relevant period showed that Plaintiff "reported benefit from myofascial release, trigger point injections, and prescribed medications." AR at 24 (citing AR at 477–685). Indeed, multiple treatment notes from Dent indicated that "previous trigger point injections have decreased [Plaintiff's] headache frequency," (AR at 603, 620), or that physical therapy for myofascial release "has helped somewhat" (AR at 629).

In addition, the ALJ pointed out that despite Plaintiff's complaints to doctors regarding photophobia and phonophobia, "she generally presented within normal limits on physical exams, including with intact ranges of motion," and no treating providers observed that she was sensitive to light, even while she was experiencing a migraine. AR at 24 (citing AR at 647–48, a treatment record from November 2017

10

noting that Plaintiff had a migraine that morning that "seem[ed] to be calming down" with Excedrin, and finding Plaintiff "[i]n no acute distress" and "pleasant").

In fact, the vast majority of objective examinations from Plaintiff's visits to Dent showed she was in "no acute distress" and alert and oriented, and sometimes also indicated full strength in her extremities and a gait within normal limits. *See, e.g.*, AR at 672–73 (January 2017). *See also* AR at 676 (Aug. 2016), 654 (Sept. 2017), 630 (May 2018), 604 (Dec. 2018). As the ALJ pointed out, these relatively normal physical examinations at Dent were consistent with physical examinations from the same time period at her primary care provider. *See* AR at 26 (citing AR at 387 (May 2018), 392 (Nov. 2017), 397 (May 2017), 401–02 (Dec. 2016), 406–07 (Sept. 2016), 410–11 (Jul. 2016)). *See also* AR at 383 (Nov. 2018).

Lastly, the ALJ observed that Plaintiff's claims of dizziness and lightheadedness were not corroborated in the objective examinations in the records from treating providers. AR at 24. For instance, in June 2016, Plaintiff visited her primary care practice because of dizziness, but her objective exam showed her to be alert and oriented, with no signs of apparent distress, grossly intact motor strength in her upper and lower extremities, and normal gait. AR at 414–15. Similarly, records from Plaintiff's monthly visits to Dent in 2017 and 2018 reflect her reports of dizziness, but that she was in no acute distress. *See, e.g,* AR at 630.

In short, consistent with 20 C.F.R. § 404.1529, SSR 16-3p, and SSR 19-4p, the ALJ acknowledged Plaintiff's impairment-related symptoms, but reasonably concluded that they were not consistent with the evidence in the record. *See, e.g.*,

*Timikia T. v. Comm'r of Soc. Sec.*, No. 23-CV-184S, 2024 WL 2109775, at *4 (W.D.N.Y. May 10, 2024) ("The Social Security Ruling for primary headache disorders requires a claimant prove the condition by objective medical evidence and not merely from her statement of symptoms . . . .").

## II. The ALJ's RFC Determination

Plaintiff also argues that the restriction of Plaintiff only to light work with limited exposure to hazards in the RFC determination was insufficient to account for the headache disorder that the ALJ found to be a severe impairment at step two. ECF No. 5-1 at 11–14. She maintains that, "[o]verall, the evidence supports inclusion of greater limitations due to Plaintiff['s] headaches," but that the ALJ either failed to address or mischaracterized the relevant evidence. *Id.* at 12. This argument is also without merit.

As noted above, after an ALJ finds at step three of the five-step sequential evaluation process that a claimant's impairments do not meet or medically equal a listing, the ALJ must proceed to make a finding regarding the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(ii)–(iv). An RFC finding is a determination of the most that the claimant can do in a work setting despite her limitations, and is based on an assessment of all of the relevant medical and other evidence in the record. 20 C.F.R. § 404.1545(a)(1), (3). With respect to assessing the RFC of an individual with the medically determinable impairment of a primary headache disorder, "[c]onsistency and supportability between reported symptoms and objective medical evidence is key . . . ." SSR 19-4p, 2019 WL 4169635, at *8.

At the hearing stage, the ALJ bears the exclusive responsibility for assessing the claimant's RFC. 20 C.F.R. § 404.1546(c). Thus, the RFC finding is an administrative, rather than a medical, determination. *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021). As such, it is within the discretion of the ALJ to resolve genuine conflicts in the evidence. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

Further, "an ALJ's decision is not necessarily internally inconsistent when an impairment found to be severe is ultimately found not disabling: the standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases." *McIntyre*, 758 F.3d at 151 (citation omitted). Accordingly, there is "no inherent error in an ALJ's determination simply because an ALJ finds a plaintiff has a severe impairment but does not assign corresponding functional limitations." *Linda M. v. Kijakazi*, No. 3:21-CV-57 (DJS), 2022 WL 4550810, at *7 (N.D.N.Y. Sept. 28, 2022).

In the present case, the ALJ restricted Plaintiff's RFC to account for her headache disorder in two ways. First, the ALJ limited Plaintiff's RFC "to light exertional work to account for [her] chronic headaches as well as her subjective complaints of occasional weakness and fatigue." AR at 24. Second, to account for Plaintiff's allegations of balance deficits, difficulty walking, and dizziness, the ALJ further restricted Plaintiff's RFC to limit her exposure to potential hazards. AR at 24. Notwithstanding Plaintiff's arguments to the contrary, the ALJ did not mischaracterize the evidence, both limitations are supported by substantial evidence,

and Plaintiff has not met her burden to demonstrate a more restrictive RFC.

Plaintiff argues that the ALJ mischaracterized the evidence by relying on Plaintiff's reported ability to work and attend school prior to her alleged onset date, and by pointing to periods of improvement without also discussing continued issues with migraines and headaches. ECF No. 5-1 at 11–12. To be sure, the ALJ did point out that Plaintiff was able to work and attend college courses prior to the alleged onset date, even though she had reported chronic daily tension headaches for many years. AR at 26 (citing AR at 675). The ALJ also noted that in June 2016, Plaintiff reported a reduction in her migraine headaches using Topamax (AR at 26 (citing AR at 678)), that she reported in August 2017 that trigger point injections reduced the frequency of her headaches (AR at 27 (citing, inter alia, AR at 659–60)), and that she reported further reductions in her headaches in 2018 with prescriptions for Lamotrigine and Topamax (AR at 27 (citing AR at 617)).

But Plaintiff's argument overstates the ALJ's reliance on this evidence. In fact, in addition to pointing out Plaintiff's reports of improvements from medication, as well as her ability to work and attend classes despite chronic tension headaches, the ALJ formulated the RFC determination based on a full review of the objective medical evidence and the medical opinion evidence from the relevant period. AR at 24–29.

To begin with, the ALJ noted Plaintiff's sick visit in January 2016 reporting that she had a headache for the prior three weeks, but that aside from some mild distress, Plaintiff "presented within normal limits on exam, including with normal gait, intact cranial nerves, and full range of motion in the extremities." AR at 24–25

14

(citing AR at 429). The ALJ observed that the results were similar both for Plaintiff's follow-up the next month, and upon establishing treatment at Dent in April 2016. AR at 25 (citing AR at 427, 681–83). Further, the ALJ discussed Plaintiff's 2016 MRI, which showed nonspecific white matter changes and right frontal cortical atrophy, but revealed no acute abnormalities. AR at 25 (citing AR at 472–73, 671). A follow-up MRI in December 2018 revealed "no acute findings," and was an "[o]verall stable abnormal MRI scan of the brain . . . when compared [with the] prior study . . . ." AR at 25 (citing AR at 456–57).

Then, focusing specifically on Plaintiff's headaches, the ALJ noted reports from July and August 2016 of decreased frequency of migraines, but worsening headaches in late 2016 and throughout early 2017. AR at 26–27 (citing AR at 671, 675). Plaintiff's treating provider at Dent acknowledged the etiology for her headaches was unknown, but believed it was likely related to a cervical myofascial pain with compounding neuralgia and migraines. AR at 27 (citing AR at 673). Accordingly, the ALJ noted that Plaintiff was started on nerve blocks, which resulted in a reduction of her headaches. AR at 27 (citing AR at 662–69). Plaintiff switched from nerve blocks to monthly trigger point injections in August 2017, which also reportedly decreased the frequency of her headaches and her symptoms of cervicalgia. AR at 27 (citing records from multiple visits to Dent for trigger point injections). At each of these visits, the results of Plaintiff's objective examinations were unremarkable. AR at 27 (citing AR at 477–685). *See also, supra*, p. 9–12.

In addition to the objective medical evidence, the ALJ considered the medical

15

opinion evidence. First, the ALJ found the prior administrative findings of state agency medical consultants Gregory Zito, M.D. and V. Baronos, M.D., to have some persuasive value, but to be less than fully persuasive, because they found insufficient evidence to make a determination about Plaintiff's functioning during the relevant period. AR at 28 (citing AR at 90, 100). *See Thomas H. v. Comm'r of Soc. Sec.*, 675 F. Supp. 3d 330, 338 (W.D.N.Y. 2023) ("it is well-settled that the opinions of state agency medical consultants may serve as substantial evidence supporting an RFC"). Instead, the ALJ "view[ed] the evidence in the light most favorable to" Plaintiff, found her headache impairment to be severe, and limited her to light work without concentrated exposure to hazards. AR at 28.

The ALJ also considered a medical opinion provided more than three years after the relevant period, in 2022, from Jessica Ambroski, PA-C, one of Plaintiff's treating providers from Dent. AR at 1560–66. Among other things, PA Ambroski opined that Plaintiff's headaches would preclude her from performing even basic work activities when they occurred, and that she could not engage in any full-time competitive employment on a sustained basis. AR at 1564–65. Nevertheless, the ALJ found this opinion unpersuasive and speculative, because it was not consistent with the evidence from the relevant period as described above. AR at 28–29. For instance, the ALJ pointed out that PA Ambroski cited to evidence in support of her opinion of symptoms that were not present during the relevant period, such as nystagmus on exams. AR at 28 (citing AR at 621, 673, 676, 679).

In sum, the ALJ applied the appropriate legal standards in the analysis of

16

Plaintiff's symptoms, the RFC determination was supported by substantial evidence, and Plaintiff has failed to prove that her RFC was more restrictive than that assessed by the ALJ. *See, e.g., Deanna K. v. Comm'r of Soc. Sec.*, No. 22-CV-219-FPG, 2023 WL 5443901, at *7 (W.D.N.Y. Aug. 24, 2023) (citing *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018)) (affirming the ALJ's RFC determination regarding plaintiff's headache disorder where the ALJ supported the finding with substantial evidence and plaintiff did not present medical evidence that she required a more restrictive RFC than found by the ALJ). Consequently, the decision of the Commissioner must be affirmed.

## CONCLUSION

For the foregoing reasons, Plaintiff Sarah R. C.'s motion for judgment on the pleadings [ECF No. 5] is denied, and the Commissioner's motion for judgment on the pleadings [ECF No. 7] is granted. The Clerk of Court is directed to enter judgment on behalf of the Commissioner and close this case.

SO ORDERED.

DATED:   November 14, 2024
         Rochester, New York

*/s/ Meredith Vacca*
HON. MEREDITH A. VACCA
United States District Judge